Please call the next case. 112-1588 Daniel Karmazin v. Area Director Counsel Good morning, Your Honors. My name is John Popelka. I'm here on behalf of Daniel Karmazin, Mr. Ugaski. This case involves an aggravation of a pre-existing condition. And the question that's presented is whether the Commission followed the analysis set forth in the Supreme Court's CISPRO decision in arriving at its conclusion. In CISPRO, the Supreme Court gave three criteria to evaluate and analyze a case involving a pre-existing condition. First, the Commission has to determine whether there was an accidental injury arising out of the employment. We have that here. That's not contested. The second issue is to determine whether the accident accelerated or aggravated the pre-existing condition. And then finally, the third is to determine whether that pre-existing condition alone caused the subsequent injury. In this case, the facts I will briefly go through, the petitioner was a 44-year-old iron worker. He had worked for the respondent for about a year prior to this. He testified that he had never, in that year prior, he had not received any medical care for the left knee. He had missed time from work due to the left knee. And he was able to perform all aspects of his job. So on the date of accident, August 7th, he's on a scissors lift that's got a bar, a protection bar, going across it at about waist level. He made the decision to grab onto that bar, swing his feet underneath it, and land on the ground below to do something. His explanation was, I'm working fast for the man. That's basically what his exact words were. There was about a six-and-a-half-foot drop. The minute he impacted the ground, he had immediate intense pain in his left knee. He kept working. He eventually saw a doctor about three weeks later. On August 21st, he saw Dr. Hung, who referred him to an orthopedic doctor, who he saw two days later. That was Dr. Walsh in the same group. Dr. Walsh injected the knee and recommended knee replacement surgery. Now, he did have prior injuries. In 1982, he had injured that knee in a motorcycle accident. He had arthroscopic surgery. And then he had had arthritic flare-ups subsequent to having that surgery. The record is pretty clear. 2002, Dr. Lawrence Lever had told him that he had end-stage osteoarthritis in the knee. 2005, he had an emergency room visit for a flare-up. And March of 2006, he had an emergency room visit for a flare-up. So there were physicians who indicated before the accident here that the claimant would require additional left knee surgery, right? That he would, in the future, eventually need knee replacement surgery, yes. But that's not a claim. We're not claiming that he needs knee replacement surgery as a result of this injury. That is not a part of this claim. The claimant knew he needed it prior. He didn't come to the commission saying, I now want it paid for because of this injury. That's not a claim. You're claiming it's an aggravation of a preexisting condition. That's correct. That there are, I'm sorry. And the commission basically held that it was a normal degenerative process of a preexisting condition. So where did they go wrong specifically? Well, I think, if you don't mind, I'm going to back up to the arbitrator's decision and show how the arbitrator viewed it and how the commission. The arbitrator chose. Excuse me. And I'm sorry to interrupt you. Yes. But even preliminary to that, can you tell us what it is that you're suggesting the standard of review should be here on this appeal? What is it? You've indicated that the commission basically misapplied CISPRO. Are you indicating that this is a question of law on which they erred, or did they misapply facts to the CISPRO case, in which case it's a manifest weight? Well, I think that both arguments can apply. In the first case, I think that there's a question of, did the claimant show the proper elements of damage to have a compensable cause of action? That's an issue of law, and that would entitle this Court to make a de novo review. But even if you disagree with me there, if we look at the analysis the commission made, they indicated that the claimant established a temporary condition. I think that that can be defeated on a manifest weight issue, on a manifest weight question also. When the arbitrator made the decision that he made, he did a chain of events analysis that roughly followed the CISPRO criteria. He found that the claimant was in a relatively good state of health prior to the accident, that he had he was able to perform all aspects of his job for the year prior. He had had no treatment for the left knee in that year, and he had immediate intense pain after the accident. It looked at the medical evidence that the Petitioner put on as our prima facie case. How is he in relatively good health with this long history of knee problems and doctors saying even before this he was going to need knee surgery? How do we have a history of good health of the knee? Relatively good health. Relatively. An iron worker is probably one of the more physically demanding jobs that are out there. He was able to perform that job for four and a half years prior to this accident, perform all aspects of the job, and in the year prior to the accident, do that work for the Respondent. Did he have a knee that needed help, that was going to eventually need surgery? Yes, he did. There's no question about that. He had a preexisting condition with respect to the knee. But he was stable enough, and the condition had not progressed to the point where he needed to have that knee replacement surgery at any point prior to this injury. As a matter of fact, as we stand here today, he still has not had that done, and works as an iron worker. There was a level of stability in the preexisting condition that allowed him to perform all aspects of his job. There may be a level of stability, but I'm not convinced it falls out of the chain of events, as that term is used. I'm not aware of a relative chain of events theory. Usually, if somebody's in good health, period, and then they have an injury that would not have, you know, occurred had it not been for the accident. Well, it's clearly a preexisting condition situation. I mean, there's, it's a, I understand your comment. The commission modified the arbitration decision. The arbitrator looked at the evidence presented by Petitioner. Our prima facie case, which was Dr. Cole, C-O-L-E, and Dr. Coe, C-O-E. Dr. Cole indicated in his records on two of the three occasions he saw the claimant that he had an exacerbation of a prior condition. Our prima facie case on whether or not that preexisting condition was aggravated and caused a change was Dr. Cole, the occupational specialist, who found that the claimant's current condition of ill-being two years after the accident was causally related to that accident, and as a result of that accident, he needed ongoing medical care, evaluation by an orthopedic surgeon, and possible injections for his chronic pain. Dr. Cole opined that as a result of the injury, he had acute and chronic pain and synovitis. The claimant's testimony bears this out, and the commission and the arbitrator both found that the petitioner was a credible witness. He testified to the following things. Unlike pre-accident, post-accident, his left knee got worse over the course of the day after he did his, as he did his activities. He had difficulty sleeping at night due to the left knee pain, which was not something that he had prior to this accident. He had the left quad and calf that was now smaller than the right, which was not a problem that he had prior. Now, in counsel's brief, there's a vague reference that he had had some atrophy in that leg prior. There's no indication where that atrophy was or what it was in relation to, but what the claimant testified to, and he was found to be credible, was I noticed a difference that I didn't notice before. Now the leg was smaller, both in the calf and the quad, and that was not the case prior. So there is a change in the condition following this injury. What the commission then did is they took this and said, we affirm on accident. We affirm on the award of medical. We take away the TTD for other reasons, but we change the cause of connection opinion. What we find is that the petitioner established only a temporary aggravation. That's not possible because our prima facie case had no evidence whatsoever that there was a temporary aggravation. The only evidence on the record that there was a temporary aggravation was from Dr. Rob, the employer's expert. Dr. Rob's opinion was accorded little weight by the arbitrator, and the reason being he never evaluated the claimant. He just reviewed medical records after the fact and made his conclusions. Now the commission doesn't then turn around and say, we now adopt Dr. Rob's opinion, and we find there's a temporary aggravation. There's no reason set forth whatsoever. They just say we view the evidence differently. Well, the evidence that the commission would be viewing would be the evidence of our prima facie case, Dr. Cole and Dr. Coe, and neither one of them indicated that there was a temporary aggravation, nor did they wish that this was only a temporary condition. In fact, Dr. Cole is saying two and a half years after the accident, this gentleman still needs medical care for the chronic, now chronic pain that was caused by this accident. So the commission's decision is both against the manifest way to the evidence, but I'm also arguing that if they just took the fiscal framework and decided these cases within that framework, took the facts and applied it to that analysis, these decisions would be much clearer and we would know where they're coming from. Instead, what you've got is a decision where they say we find it differently, and you're forced to struggle to try to determine, well, why is it different? What did you base that on? There is no reasoning on why they view it differently. Well, isn't our job, though, to, under the manifest way standard, to look at the evidence and see whether there is sufficient evidence in the record to support their decision, whether or not they refer to that specific evidence. Yes, it is. And so if you've got Dr. Rob in there. Well, you've got Dr. Rob, but you're also, to a certain degree, you're hamstrung by the commission's determination, which there's nothing contrary in the commission decision which says Dr. Rob's opinion should be accorded little weight. There was no finding by the commission that that decision should be changed. They agreed with the credibility findings of the arbitrator. They specifically say that. They don't anywhere say, however, we are going to differ with the arbitrator and accord weight to Dr. Rob's opinion. They don't do that. How much is little? They didn't say no weight. They said little weight. Well, little weight. I mean, and the fact of the, so is that enough to overcome a manifest weight standard? Is there, you've got an opinion that the commission for the most part disregarded, not totally disregarded, but basically said we're really not going to take his opinion into account in making our decision. If that's the entire basis that we're forced to conclude that they must have been relying on, my argument is that doesn't meet the, then I meet the manifest weight standard that the evidence clearly shows that an aggravation did take place here. But that aggravation, that aggravation has to lie in the causal chain of the current condition of ill being. And according to Rob, it doesn't. And his opinion was accorded little weight by the commission. Well, I don't know that that's true. The commission says, in Rob's view, any knee treatment petition required after February 14, 2008 would be related to the natural progression of his osteoarthritis and not the alleged work accident. Prior sentence says that with the aggravation improving by February 14, 2008, they called release him. And at the very beginning of their decision, they say, In the commission's view, the work accident of August 7, 2007, resulting in only a temporary aggravation of the preexisting left knee condition of ill being, with this condition returning to baseline on February 14, 2008, the date on which Gold discharged the petitioner   failed to establish entitlement for TTD or permanency. So all they're saying is, yes, there was an aggravation, but it was temporary, and it doesn't lie within the causal chain of his current condition of ill being. I think what you were reading from initially concerning Dr. Rob's findings concerning Dr. Rob was paragraph 25 of the commission decision, where they're basically just summarizing what his findings were. Absolutely. But their finding is actually in accord with it. Their finding is exactly in accord with it. Well, no, their finding was that the petitioner established only a temporary aggravation. That was not the petitioner's prima facie case. There was no establishment by the petitioner that there was only a temporary condition. The only evidence we established was that there was no baseline return. There was subsequent disability. The petitioner failed to establish entitlement to either temporary disability or permanent disability. They say that in the commission's view, the accident resulted in only a temporary aggravation. Well, when did that condition become? You have a temporary condition where Dr. Koh, who is the last doctor, the last physician to see the claimant, two years after the date of accident, in June of 2009, says this is not a temporary condition. It's a permanent condition. There's no doubt if they would have gone along with you, we couldn't reverse that either. Well, on a manifest plate issue, you have to also have to look at the commission's conclusion. He returned to baseline. Did he return to baseline? According to Rob, he did. But Dr. Rob never saw him. So you can't necessarily, that's not a. Well, that's credibility. I mean, now we're back to. I'm sorry, Your Honor. You've got one opinion versus another opinion. There's no way you're going to get around that. Well, I think. And if Justice McCullough were here, you know what he'd say to you, don't you? You couldn't convince Commissioner Mason of your position. You know. And you know exactly what he'd say. But. Well, let's look at just the issue of, and if you don't mind me. Yeah, go ahead. One second. He returned to baseline. The commission's decision that it's temporary is predicated on its conclusion that his condition returned to baseline. No doubt. As of February. Absolutely no doubt. If he did not return to baseline, if where he was in February of 2008 or at the time of the hearing, which is actually what's in dispute here, was not baseline, then I submit to you. You know, you would have to go to February 18th because his condition could have progressed thereafter based upon the osteoarthritis and not the event. So you have to go back to the February, what is the date, February 18th, February 14th, 2008. You have to attack their conclusion that he was at baseline February 14th, February 15th, 2008. Either that's factually supportable or it's not. Okay. And so I can do that with credible, with testimony that the commission says is credible. Clearly. The commission says it's very credible that the petitioner was kept awake at night as a result of left knee pain following this injury and he was not prior. So there's a change in the condition. Counselor, your time has gone to the hour.  Thank you. You'll have time. Thank you. Good morning, Your Honors. Dan Ugasti on behalf of the company, Area Erectors, Mr. Popalka. Your Honors, the employer's position is the commission's decision is actually supported by evidence and therefore by the manifest way of the evidence. The employee was an iron worker. He had a long history of knee problems, as you've noted. He had been recommended for a knee replacement, had injections and ER visits, flare-ups, as the commission and I believe maybe even the doctors had called them. He had an accident at work and while we may not like it, we accepted the commission's finding on that issue and they found he aggravated it, except temporarily. And contrary to the employee's position here, I don't believe this involves a CISPRO issue. CISPRO refers to the accident, whether or not there's an aggravation of a preexisting condition. Well, that sets the parameters of the various ways to establish it. Right. And the commission found for him on that issue. We lost there. They found he had an accident and he aggravated this preexisting condition. Therefore, there's something to the claim. But what it is the commission's problems to do then is decide whether the arbitrator got it right and whether or not there's an aggravation that is ongoing, is connected to the current condition of ill-being, and whether or not permanency and medical expenses, TTD, should be awarded. And here, what the commission says is, while they will give deference to the various inconsistencies, the way they view the evidence, including the medical opinions, including the testimony, including everything set before them, is we only have a temporary aggravation. And as has been pointed out, that is supported by Dr. Rob's report, an opinion that's in evidence. It is supported by Dr. Cole's own records, which indicate he was returning petitioner back to unrestricted work. He didn't need any further care at that point. He could take DAPO and go about his life as he could tolerate. And the petitioner did. He went back to work as an iron worker. That's in the record. He worked after Dr. Cole released him to work as an iron worker. The commission obviously didn't give any weight to Dr. Cole's opinion because they didn't agree with him. They didn't specifically state that, but it can be inferred rather easily from their finding. It's just a difference as to how they viewed the evidence on causation. They found a temporary aggravation and, therefore, no permanency. Even though if you accept petitioner or employee's argument that, in fact, we have some type of causal connection between the condition and the accident that goes past that date, it's still the commission's province to determine what the permanency is. And he hasn't shown that the commission's decision on permanency of the fact that they determined there's no permanency there is beyond the manifest weight of the evidence. Again, he's an iron worker. He's back full duty. There's been no showing in any of the medical evidence, according to the petitioners or the employees, any worse off after the accident than he was before the accident. They find he's a baseline. It was nothing more than a flare-up. Therefore, we believe that the commission's decision is not against the manifest weight of the evidence, and the decision should be affirmed. Thank you. Thank you, Counsel. Counsel may reply. The commission did liken the current condition of the claimant to the flare-ups that he had had previously, as Counsel had indicated. There's a fundamental difference, however. In the previous flare-ups that he had in 2005 and 2006 were attended by either a single visit to an emergency room or one to two visit follow-up with a physician. This was not one of those flare-ups. This was the claimant was under medical care of his physicians for six months. There was a claim by one of the physicians that he needed to have knee replacement surgery now as a result of this injury. He had undergone injections. He underwent a month and a half of physical therapy, and the condition changed in terms of what he was dealing with after this accident occurred, which was going to have an impact on his future earning ability. The pain progressively getting worse during the course of the day, impacting his ability to sleep at night, those are all issues of permanency that clearly show that there was a change in the condition. Even if you were to accept the commission's decision that there was, that it was a temporary condition up through February of 2008, there's still sufficient evidence there based on the credible testimony of the petitioner that there was permanency. And the permanency awarded by the arbitrator, 10 percent loss of the leg, I would submit to you would be an appropriate award even under the circumstances of finding that it was a temporary condition. However, how can a condition be permanent when it's ongoing and there's medical opinion that says there's a need for ongoing medical care due to it? I submit to you it can't be. This decision is against the manifest way to the evidence. And the reason I brought up the de novo review concerning the way that the commission arrives at its decisions, I know that you get a lot of cases from the commission that leave you wondering how the commission made its decision. I would encourage this Court to use this decision to remind the commission there's a legal framework that needs to be followed on these cases that can add a lot of certainty to this system. This is how the appellate court and the Supreme Court has decided these cases need to be decided. Follow this format by applying that format to the facts. The commission didn't do this here. Counsel is saying we can infer the commission found this. We're guessing what the commission had to do. We're looking at a decision back saying, well, they had to have adopted Rob in order to get to where they wanted to, but they don't say that. I would encourage you to use this decision as an opportunity to remind the commission let's follow the legal frameworks that have been already established so we can have more certainty in the system. Thank you. Thank you, counsel, both for your arguments in this matter. I'd like to take my advisement that this position shall issue. The Court will stand in recess until 9 a.m. tomorrow morning. Thank you.